STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **D.W.**

**No. 20-0875** (Randolph County 19-JA-090)

**MEMORANDUM DECISION**

Petitioner Father T.W., by counsel Gregory R. Tingler, appeals the Circuit Court of Randolph County's September 30, 2020, order terminating his parental rights to D.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period and denying petitioner's motion for a second Interstate Compact on the Placement of Children ("ICPC") home study to be performed on the maternal grandfather' home.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the mother based upon allegations of drug abuse. Specifically, the DHHR alleged that petitioner was incarcerated in Virginia and failed to protect the child from the mother's substance abuse. Approximately three months following the child's birth in April of 2019, Child Protective Services

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The ICPC governs the interstate placement of children, including adoptive placements, to ensure that children will be living in safe and suitable homes. *See generally* W. Va. Code §§ 49-7-101 to -304.

("CPS") responded to the mother's home after learning of her substance abuse. The mother admitted to abusing methamphetamine and appeared to be under the influence at that time. The mother denied abusing drugs during her pregnancy, but prenatal records indicated that she tested positive for drugs on a few occasions during her pregnancy. The mother acknowledged that petitioner had been incarcerated since prior to the child's birth and further admitted that she and petitioner abused drugs together prior to his incarceration. Petitioner was released from incarceration on January 21, 2020.

Following an interview with petitioner, the DHHR filed an amended petition against him in February of 2020. During the interview, petitioner reported that he had been in a relationship with the mother for approximately five years and knew that the mother was pregnant while he was incarcerated. Petitioner admitted to a history of substance abuse but claimed he was unaware that the mother was using anything other than prescribed buprenorphine during her pregnancy. The DHHR further alleged that petitioner had been incarcerated on "four counts of credit larceny and fraud from 2016," but was now on probation in the State of Virginia. Petitioner reported that "he never dealt with these charges and a capias was opened due to his failure to appear in court." A DHHR worker also spoke to petitioner's probation officer, who reported that petitioner had to obtain permission to go out of state to attend any court hearings or meetings having to do with the case. Lastly, the DHHR alleged that petitioner had never met the child due to his incarceration.

Later in February, petitioner stipulated to the allegations contained in the petitions. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent. Petitioner requested a post-adjudicatory improvement period, and the circuit court held the motion in abeyance to provide petitioner time to set up a drug screening plan between Virginia and West Virginia. The DHHR advised the circuit court that an ICPC home study had been initiated with regard to the maternal grandfather, who lived in Virginia. However, because petitioner moved into the grandfather's home following his release from prison, the ICPC was denied. Petitioner requested that the circuit court order another ICPC, but the circuit court denied the request given that the first ICPC process took six months to complete. The circuit court set the matter for disposition.

In September of 2020, the circuit court held a dispositional hearing. Counsel for the mother renewed the request for a new ICPC home study to be performed, noting that the only disqualifying factor had been petitioner's presence in the home and that he no longer lived there. Counsel for petitioner advised the circuit court that petitioner had been reincarcerated in March of 2020 through no fault of his own. The prison mistakenly released petitioner early on January 21, 2020, and thereafter instructed petitioner to surrender himself to finish the remainder of his sentence, which he did. However, petitioner was permitted to attend the hearing via telephone. Petitioner testified that he was incarcerated from January 3, 2019, until January 21, 2020, when he was mistakenly released due to a clerical error. Petitioner admitted that he was incarcerated at the time of the child's birth and that he had never met the child. When asked whether there was more he could have done to protect the child, petitioner responded, "The only thing that I know that she was using was [buprenorphine]. But the hospital in Elkins[, West Virginia,] was prescribing it. So I don't know . . . they were giving them to her. You know what I mean?" Petitioner requested an improvement period and testified that he obtained employment and produced negative drug

2

screens during the forty days he was released from prison. Petitioner stated that his new anticipated release date was October 19, 2020.

After hearing testimony, the circuit court denied petitioner's request for an improvement period, finding that he was unable to participate due to his incarceration. The circuit court noted that while petitioner claimed his release date would be in October of 2020, it was "not able to ascertain if he's even guaranteed to be released at that time." Ultimately, the circuit court terminated petitioner's parental rights to the child. The circuit court found that petitioner had never seen the child due to his continuous incarceration since her birth and that there was "no other potential alternative that is consistent with the child's best interests . . . other than termination given the circumstances, that being [petitioner's] inability to participate in [an] improvement period[]." The circuit court further found that petitioner was unable to provide adequately for the child's needs and that the child had been in foster care for nearly her entire life while the parents were incarcerated. Accordingly, the circuit court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the circuit court's September 30, 2020, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying his motion for a second ICPC home study of the maternal grandfather's home. According to petitioner, the sole reason that the first ICPC home study was denied was due to him living in the home following his release from incarceration. Petitioner avers that he left the home when he learned that his presence could cause the home study to be denied, and that another home study should have been ordered. Petitioner claims that it was error for the circuit court to deny the ICPC home study on the basis of timing when the proceedings continued beyond the six months the study would have taken to complete.

---

[3]The mother's parental rights were also terminated below. The child was placed in a foster home, and the permanency plan for the child is adoption by the foster family.

We have previously held that

> "[t]raditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case." *Snyder v. Callaghan*, 168 W.Va. 265, 279, 284 S.E.2d 241, 250 (1981) (citation omitted).

*Kanawha Cty. Pub. Library Bd. v. Bd. of Educ. of Cty. of Kanawha*, 231 W. Va. 386, 398, 745 S.E.2d 424, 436 (2013). This concept has been recognized in regard to parties of child abuse and neglect proceedings as well. *See In re J.G.*, No. 16-0337, 2016 WL 4611246, at *3 (W. Va. Sept. 6, 2016)(memorandum decision) (recognizing that petitioner father lacked standing to appeal limitation on mother's visitation). The maternal grandfather could have moved to intervene in the proceedings, but did not. Permanent placement of the child in the grandfather's home is a privilege that he would enjoy, not petitioner, and it is he who must advocate for that position. Petitioner does not have standing to advocate on the grandfather's behalf and, therefore, is entitled to no relief on appeal.

Petitioner next argues that the circuit court erred in terminating his parental rights without first granting him an improvement period. Petitioner argues that he stipulated to his failure to protect the child from the mother's drug abuse, that he "set out to become a good father" following his release from incarceration, and that he "made remarkable strides toward a new life worthy of reunification with" the child. Specifically, petitioner obtained housing and employment and did not fail any drug screens during his brief release. He was also "making plans" to speak with his probation officer regarding counseling and Alcoholics Anonymous meetings. Petitioner's progress was "derailed by the error made by the State of Virginia that led to his re-incarceration." However, as of the dispositional hearing, only one month of his sentence remained to be served and, based on the evidence, "there was absolutely no reason to believe [p]etitioner would do anything different than he did after his first release and that was clearly sufficient to warrant an improvement period." Petitioner also argues that the circuit court erred in terminating his parental rights rather than imposing a less-restrictive dispositional alternative. Petitioner contends that the circuit court should have "transferred guardianship" to the grandfather. According to petitioner, had a second ICPC study been ordered, it likely would have been approved and the circuit court "would have had a less[-]restrictive alternative available to it."[4]

As this Court has recognized, a parent bears the burden of establishing that he is likely to fully comply with an improvement period in order to obtain one. *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period'"). Here, the record overwhelmingly establishes that petitioner failed to satisfy this burden. Although petitioner claims that he complied with drug screening and obtained housing and employment during his release from incarceration,

---

[4]As noted above, petitioner lacks standing to raise issue with regard to the ICPC on behalf of the grandfather.

the record shows that this release lasted for only forty days during the entirety of the proceedings. As such, petitioner was unavailable to participate in any services designed to remedy the conditions of abuse. Moreover, petitioner minimized his knowledge of the mother's drug abuse despite admitting to having been in a relationship with her for five years and the mother's disclosures that the couple abused drugs together prior to petitioner's incarceration. Petitioner remained incarcerated at the time of the dispositional hearing and provides no explanation for how he would have participated in an improvement period while incarcerated. In short, we find that petitioner's unsupported assertion that he was likely to address the conditions of abuse and neglect was insufficient to satisfy the burden of proof necessary for obtaining an improvement period. Because petitioner failed to satisfy this burden, we find no abuse of discretion in the circuit court's denial of his motion for an improvement period. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

To the extent petitioner argues that the circuit court should have continued the dispositional hearing until he was released from incarceration and available to participate in services, we note that Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "[u]nder no circumstances shall a child abuse and neglect proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings." Accordingly, the circuit court did not err in refusing to delay petitioner's improvement period until his release from incarceration.

The evidence set forth above likewise supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The evidence establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. Petitioner minimized his actions, testifying that he only knew the mother to be using prescribed buprenorphine despite her disclosures otherwise. Petitioner further testified that he did not know what more he could have done to protect the child from the mother's drug abuse. Moreover, petitioner remained incarcerated throughout the entirety of the proceedings except for the forty days he was mistakenly released. As such, petitioner was unable to participate in any services designed to remedy the conditions of abuse or neglect. Petitioner provided nothing more than a proffer as to his expected release date at the dispositional hearing. Further, even had petitioner been released from incarceration and available to participate in an improvement period, he fails to establish how he would have been able to satisfactorily participate in services to remedy the conditions of abuse given that his probation required that he remain in Virginia. We have held that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears

5

that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). While petitioner argues that a less-restrictive dispositional alternative should have been granted, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given that petitioner failed to adequately address the conditions of abuse leading to the petition's filing, we find that sufficient evidence existed to terminate petitioner's parental rights and further find that he is entitled to no relief in this regard.[5]

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 30, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**
Justice William R. Wooton

---

[5]We note the facts of this case are distinguishable from *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011), wherein this Court set forth factors for circuit courts to consider when no "circumstances other than incarceration are raised at a dispositional hearing" as cause to terminate a parent's parental rights. *Cecil T.*, 228 W. Va. 89, 91, 717 S.E.2d 873, 875, syl. pt. 3, in part. In this case, the circuit court clearly noted petitioner's failure to acknowledge his abuse and neglect of the child(ren) as a basis for its decision on the record at disposition. Not only is this a compelling circumstance, other than his incarceration during the proceedings, to terminate his parental rights, but it constitutes a situation in which such conditions are beyond correction. *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable. . . .").

6